**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

---

JEROME MCCLINTON                              CIVIL ACTION NO. 11-cv-2156

VERSUS                                        JUDGE ELIZABETH ERNY FOOTE

SAM'S EAST, INC., ET AL.                      MAGISTRATE JUDGE MARK HORNSBY

---

## MEMORANDUM ORDER

Mr. McClinton, a former employee of Sam's Club, alleges that he was sexually harassed by his female supervisor, discriminated against because of his race and gender when he was passed over for other positions and ultimately terminated, and retaliated against after he filed a police report and an E.E.O.C. charge.  Mr. McClinton also lodges state law claims of negligent and intentional infliction of emotional distress as well as a claim of sexual harassment under Louisiana law.  Mr. McClinton is proceeding pro se in this matter.  Sam's East, Inc., Wal-Mart Associates Inc., and Wal-Mart Stores East LP ("Defendants") now move to dismiss all of Mr. McClinton's claims with the exception of his retaliation claim.  [Record Documents 38 and 44].  For the reasons given below, the Court **GRANTS** Defendants' motions to dismiss.  Mr. McClinton's retaliation claim remains pending.

## I.      Factual and Procedural Background

Many of the facts alleged by Mr. McClinton do not appear on the face of the complaint or amended complaints but rather are found in his oppositions to the

Defendants' motions to dismiss.  While only allegations that appear of the face of the complaint may normally be considered in determining whether the plaintiff has alleged facts stating a claim upon which relief can be granted, pro se pleadings are held to less stringent standards than pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  Pro se pleadings must be treated liberally, and dismissal under Rule 12(b)(6) is generally disfavored.  U.S. v. Robinson, 78 F.3d 172, 174 (5th Cir. 1996), Priester v. Lowndes County, 354 F.3d 414, 418 (5th Cir. 2004).  Accordingly, in ruling on Defendants' motions the Court will consider the facts alleged in both Mr. McClinton's complaints and in his oppositions to Defendants' motions to dismiss.  Ultimately, the Court's ruling on Defendants' motions to dismiss would not be changed if the Court looked only at Mr. McClinton's complaints.

In 2004, Mr. McClinton, an African-American male, worked in various capacities for Sam's Club and Wal-Mart in Surprise, Arizona.  In 2009, Mr. McClinton transferred to a Sam's Club in Shreveport, Louisiana after his wife passed away from injuries sustained in a car accident and after his mother, who lives in Shreveport, became ill.  Mr. McClinton asserts the managers at the Shreveport store passed him over for numerous jobs for which he was qualified in favor of less-qualified female employees.  [Record Document 43, p.4].  He also claims that his manager, Amanda Charron, sexually harassed him. He claims the managers with whom he spoke about this harassment took no action against Ms. Charron.  [Record Document 43, p.2].

Mr. McClinton alleges several specific instances where Manager Amanda Charron allegedly sexually harassed him.  Once, when Mr. McClinton was stocking a cooler, Ms. Charron entered the cooler and tapped Mr. McClinton on his "butt an said nice an tight [sic]" causing Mr. McClinton to run out the other side of the cooler.  [Record Document 42, p.2].  A similar incident occurred on another Sunday.  Id.  Mr. McClinton also alleges Ms. Charron hugged him in front of a bread rack in full view of a manager.  Id.  On another occasion Ms. Charron allegedly asked Mr. McClinton if he "put the chicken on," and then wrapped her arms around him and said that they "could be a great team together if [Mr. McClinton] would just play ball."  [Record Document 42, p.2].  On another occasion, Ms. Charron allegedly asked Mr. McClinton about the chicken again and rubbed him while saying "see we can be a great team."  Id.

Mr. McClinton explored several avenues to address the ongoing harassment.  He spoke with his manager John about the problem twice in August, 2011.  Id.  He also spoke with manager Tony and Asset Protection Manager Steve Fullilove in August, 2011.  Id.  None of these managers took any action against Ms. Charron.  Id.  On August 26, 2011, Mr. McClinton text-messaged Human Resources Manager Rod about the harassment problem, and Rod informed Mr. McClinton he would speak with John.  Id.  Mr. McClinton did not notice a change in his work environment.  Id.  Mr. McClinton subsequently filed a complaint with both the Wal-Mart Global Ethics Office and the E.E.O.C.  Id.  He also spoke with manager Reba Jones who allegedly confronted Ms.

Charron.  Id.  This effort proved futile.  Ms. Charron informed Mr. McClinton she was sick of having people "go to Reba on her," and her behavior did not change.  Id.

After the E.E.O.C. suggested Mr. McClinton file a police report because their case load was so backed up they doubted that they could review his complaint in a timely manner, Mr. McClinton filed a police report with the Shreveport Police Department. [Record Document 42, p.3].  A sergeant at the Shreveport Police Department allegedly told Mr. McClinton that he "was not going to do anything" and Mr. McClinton should just "take one for the boys."  Id.  Unsatisfied, Mr. Clinton spoke with a detective.  The detective contacted Ms. Charron, and she allegedly ceased disturbing Mr. McClinton for three days; soon afterwards, however, she exposed herself to Mr. McClinton by pulling down her pants to show a tattoo.  [Record Document 32, p.2].  Mr. McClinton attempted to speak with Human Resources Manager Rod again, but Rod said he could not speak with Mr. McClinton because of the E.E.O.C. filing.  [Record Document 42, p.3].

Mr. McClinton claims that Ms. Charron transferred to a Texas store.  [Record document 43-1, p. 26].  Documents relating to Mr. McClinton's termination indicate that he was terminated on the grounds that he harassed and intimidated other employees and caused them to fear for their safety. [Record Document 43-1, p.40].  Defendants also terminated Mr. McClinton for use of a "personal electronic device that harms Walmart's legitimate business interests."  Id.  Mr. McClinton claims his managers convinced employees to make false statements against him in order to terminate him.

[Record Document 43-1, pp. 24-26].  He also claims that he was terminated because he filed a complaint against the Defendants with the E.E.O.C.  [Record Document 32, p. 4].

Mr. McClinton filed his first Complaint on December 14, 2011, against Sam's East, Inc.  [Record Document 1].   Mr. McClinton subsequently amended his complaint five times, adding additional claims and additional defendants. The Court has reviewed all Mr. McClinton's complaints and his oppositions to Defendants' motions and concludes that Mr. McClinton has alleged the following claims: one Title VII sexual harassment claim; one sexual harassment claim under 42 U.S.C. §1981; one Title VII gender discrimination claim; one Title VII racial discrimination claim; one racial discrimination claim under 42 U.S.C. §1981; one retaliation claim under 42 U.S.C. §2000e-3(a), and state law claims of intentional and negligent infliction of emotional distress and sexual harassment.

Defendants have filed two motions to dismiss Mr. McClinton's complaints under Fed. R. Civ. P. 12(b)(6).  [Record Documents 38 and 42].  The second motion to dismiss was filed when Mr. McClinton amended his complaint one final time after the Defendants' first motion to dismiss had already been filed. This ruling disposes of both motions.

## II. Law and Analysis

### A.    Standard for Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of any claim that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

order to survive a Rule 12(b)(6) motion to dismiss, a "complaint must allege sufficient factual  matter, accepted as true, to state a claim that is plausible on its face."  Hershey v. Energy Transfer Partners, L.P, 610 F.3d 239, 245 (5th Cir. 2010).  While a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations, it must at least allege plausible grounds from which one could infer that the elements of the claim can be made out.  Bell Atlantic Co. v. Twombly, 550 U.S. 544, 556 (2007), In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007).  The complaint must allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of [every element of the claim]."   Bell Atlantic Co., 550 U.S. at 556.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Courts must not, however, convert this "plausibility" requirement into an analysis of whether the non-moving party is likely to succeed on the merits.  Bell Atlantic Co., 550 U.S. at 556 ("of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.")  (citations omitted).  As previously stated, in order to insure equal access to the courts pleadings of litigants proceeding pro se are treated liberally.  U.S. v. Robinson, 78 F.3d 172, 174 (5th Cir. 1996).

## B.    Sexual Harassment Claims

While Plaintiff's sexual harassment allegations are styled as two claims, it is apparent from reading Plaintiff's complaints that the same allegations concerning the

behavior of Ms. Charron make up the factual basis of both claims.  Plaintiff's claim that

he is entitled to relief under 42 U.S.C. §1981 need not detain this Court long.  Section

1981 reads in pertinent part:

> (a) Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

As the Fifth Circuit has stated previously, § 1981 forbids racial discrimination in the

making and enforcement of private contracts.  Bobo v. ITT, Continental Baking Co., 662

F.2d 340, 342 (5th Cir. 1981).  Claims alleging discrimination on the basis of sex,

however, are not cognizable under § 1981.  Davis v. Dallas Indep. Sch. Dist., 448 Fed.

Appx. 485, 490-91 (5th Cir. 2011), Carter v. Philip Morris, USA, 36 F.3d 1091, 1994 U.S.

App. LEXIS 27620 (4th Cir. 1994) (holding sexual harassment claims are not cognizable

under §1981), Wall v. AT & T Technologies, 754 F. Supp. 1084, 1094 (M.D.N.C. 1990)

(holding sexual harassment is not actionable under §1981 because Congress in 1866

did not contemplate such discrimination when securing the rights of freed slaves).

Accordingly, Defendants' motion to dismiss Plaintiff's § 1981 sexual harassment claim is

**GRANTED**.

Plaintiff also asserts a sexual harassment claim under Title VII.  Under Title VII,

it is illegal "for an employer to fail or refuse to hire or to discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's... sex." 42

U.S.C. § 2000e–2(a)(1).  Title VII prohibits sexual harassment that takes the form of a

tangible employment action, such as a demotion or denial of promotion, or the creation

of a hostile or abusive working environment.  Faragher v. City of Boca Raton, 524 U.S.

775, 786 (1998).  The question of whether an affirmative defense is available to the

employer turns on whether the harassment is accompanied by a tangible employment

action.  Id. at 807-08.  A tangible employment action is a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in

benefits.  Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 762 (1998).  To make out

a hostile work environment claim, Plaintiff must allege facts sufficient to satisfy the

following four elements: (1) he belongs to a protected group; (2) he was subjected to

unwelcome harassment; (3) the harassment was based on sex; and (4) the harassment

affected a term, condition, or privilege of employment.  Stewart v. Miss. Transp.

Comm'n, 586 F.3d 321, 330 (5th Cir. 2009).

      Here, Mr. McClinton appears to embrace both the tangible-employment-action

and the hostile-work-environment theories:

> The conduct of [Defendants] resulted in a hostile work environment and lead to
> the improper discharge of Jerome McClinton, who due to mental concerns
> brought on by the conduct of defendants and to the working conditions created
> by the work environment, terminated his employment with [Defendants].

> [Record Document 42, p. 3].

Overlooking the fact that Mr. McClinton alleges at other points in his complaint that he was terminated rather than choosing to leave, Mr. McClinton still does not adequately plead a sexual harassment claim premised on a tangible employment action. Mr. McClinton was not terminated by Ms. Charron, the alleged sexual-harassor, and he does not allege that he was terminated because he failed to submit to any sexual demands of Ms. Charron.

Neither does he plausibly allege a claim of hostile work environment. To make out a hostile work environment claim, Plaintiff must allege facts sufficient to satisfy the following four elements: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on sex; and (4) the harassment affected a term, condition, or privilege of employment. Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 330 (5th Cir. 2009). Mr. McClinton has not plead facts from which one could plausibly infer that Ms. Charron's actions affected a term, condition, or privilege of his employment.

In order to affect a term, condition or privilege of employment, the harassment "must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116, 122 (2002). In determining whether a workplace constitutes a hostile work environment exists, courts must consider the following circumstances: (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether the discriminatory conduct is physically threatening or humiliating, or merely an offensive utterance, and

(4) whether the discriminatory conduct unreasonably interferes with an employee's work performance. Ramsey v. Henderson Postmaster Gen., 286 F.3d 264, 268 (5th Cir. 2002). The working environment must be both "objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993)).

In total, Mr. McClinton alleges seven instances of sexual harassment, all involving Ms. Charron: (1) an instance of "body touching" reported on August 26, 2011; (2) Ms. Charron touching his rear end in the cooler; (3) Ms. Charron again touching his rear end in the cooler; (4) Ms. Charron hugging Mr. McClinton in front of another manager; (5) Ms. Charron wrapping her arm around Mr. McClinton and asserting the two would make "a great team;" (6) Ms. Charron again wrapping her arm around Mr. McClinton and referring to them as a team; and (7) Ms. Charron dropping her pants to show her tattoo. [Record Document 32, p. 2; Record Document 38-2, p. 13]. While such occurrences, if proved, would certainly be impolite and rude, they do not create an abusive work environment. The Fifth Circuit has made clear that because Title VII is not a general workplace civility code, the legal threshold for an abusive work environment is high.[1]

---

[1]Compare Paul v. Northrop Grumman Ship Sys., 309 Fed. Appx. 825 (5th Cir. 2009) (upholding grant of summary judgment for defendant when employee touched plaintiff's breasts, staring in intimidating manner, placing arms around plaintiff's waist, and rubbed plaintiff's buttocks), Gibson v. Potter, 264 Fed. Appx 397, 398 (5th Cir. 2008) (upholding grant of summary judgment for defendant when supervisor "grabbed [plaintiff] on the buttocks," engaged in "'sex talk," asked plaintiff for dates, and offered his telephone number), Hockman v. Westward Commun., LLC, 407 F.3d 317 (5th Cir. 2004) (upholding grant of summary judgment when immediate supervisor described

While each of the cases cited below reached the summary judgment stage, collectively they draw a line separating factual scenarios that rise to the level of an abusive work environment from those that do not. As Mr. McClinton is proceeding pro se and faces only a motion to dismiss, he is entitled to more leeway than if a motion for summary judgment were pending.  Still, the facts alleged by Mr. McClinton simply do not state a plausible claim of hostile work environment. The verbal remarks made my Ms. Charron to the effect that she and Mr. McClinton would make a "great team," while unwelcome to Mr. McClinton, are not so offensive that a reasonable person would find them hostile or

_____

plaintiff's body favorably, made comments to plaintiff about the bodies of other employees, slapped plaintiff's behind with a newspaper, "grabbed or brushed" against her breasts and behind, held her cheeks and attempted to kiss her, asked her to come in early so they could be alone together, and once stood in the doorway of the ladies' room to watch plaintiff wash her hands), and Derouen v. Carquest Auto Parts, 275 F.3d 42, 2001 WL 1223628 (5th Cir. 2001)(upholding grant of summary judgment for defendant when co-worker attempted to grab plaintiff's breast and later rubbed her thigh, and when a customer twice made sexually threatening remarks to her); with McKinnis v. Crescent Guardian, Inc., 189 Fed. Appx. 307, 310 (5th Cir. 2006) (holding that chronic unwanted touching, including touching on the breasts and thigh over a year-long period, repeated demands for "hugs and kisses," and other inappropriate behavior resulting in plaintiff's resignation, supported a hostile work environment claim), Harvill v. Westward Comm., 433 F.3d 428, 435-36 (5th Cir. 2005) (holding that repeated unwanted fondling and rubbing of plaintiff's breasts and buttocks and unwanted kissing on the cheek over a seven-month period, despite her protests on every occasion, was sufficiently severe or pervasive), and Waltman v. International Paper Co. 875 F.2d 468 (5th Cir. 1989) (reversing grant of summary judgment for defendant when a supervisor broadcast obscenities directed toward the plaintiff over the public address system, supervisor urged plaintiff to have sex with a co-worker, supervisor pinched plaintiff's buttocks with pliers and tried to put his hands in her back pockets, plaintiff received over thirty pornographic notes in her locker, sexually explicit pictures and graffiti directed at her appeared on the walls, one employee threatened her if she reported the activities, another employee stuck his tongue in her ear, and another employee threatened her with sexual violence and then dangled her over a stairwell more than thirty feet from the floor).

abusive. Similarly, the alleged hugging of the plaintiff and touching of his buttocks certainly do not rise to the level of the touching in Waltman v. Int'l Paper Co. 875 F.2d 468 (5th Cir. 1989) and Harvill v. Westward Comm., 433 F.3d 428, and do not even rise to the level of touching found in Paul v. Northrop Grumman Ship Sys., 309 Fed. Appx. 825 (5th Cir. 2009).  Neither does he allege the type of extended and unrelenting harassment found in Harvill v. Westward Comm., 433 F.3d 428 (5th Cir. 2005) or McKinnis v. Crescent Guardian, Inc., 189 Fed. Appx. 307, 310 (5th Cir. 2006).

The problem is not that Mr. McClinton is unlikely to prove his claim of sexual harassment, but that if he did prove the facts alleged in his six complaints, they would not rise to the level of create a hostile work environment.  Neither is it reasonable to expect that discovery would reveal evidence making out a claim for sexual harrassment, as Mr. McClinton is presumably already aware of the extent of Ms. Charron's advances, having being at the receiving end of them, and he has had five opporunities to amend his complaint and add new allegations.  Mr. McClinton has thus failed to plead a claim upon which relief can be granted.  Accordingly, Defendants' motion to dismiss Plaintiff's Title VII sexual harassment claim is **GRANTED**.

Mr. McClinton also alleges a sexual harassment claim under La. R.S. §23:301 et seq.  [Record Document 42, p.5].  Louisiana anti-discrimination claims are analyzed in the same way as Title VII claims.  Brown v. S.B.C. Telecom, Inc., 67 Fed. Appx. 241, 2003 WL 21108499 (5th Cir. 2003) (noting that the same analysis of federal Title VII claims disposes of Louisiana anti-discrimination claims because "Louisiana uses federal

jurisprudence to interpret its anti-discrimination laws") (citing King v. Phelps Dunbar, LLP, 743 So.2d 181, 187 (La. 1999)), Williams v. Conoco, Inc., 860 F.2d 1306, 1307 (5th Cir. 1986) (same), Bustamento v. Tucker, 607 So. 2d 532, 539 n.9 (La. 1992) (same). The same disposition of Mr. McClinton's state law sexual harassment claim is therefore appropriate.  For reasons given above with respect to Plaintiff's federal sexual harassment claim, Defendants' motion to dismiss Plaintiff's state law sexual harassment claim is **GRANTED**.

### C.   Racial Discrimination

Mr. McClinton asserts a claims of racial discrimination under Title VII and under 42 U.S.C. §1981.  [Record Document 42, p.4].  The claim of racial discrimination under Title VII is easily disposed of, as Mr. McClinton has not yet exhausted his administrative remedies.  In order to sue under Title VII a plaintiff must first exhaust his administrative remedies.  Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002). A plaintiff's remedies are exhausted when he files a timely charge of discrimination with the proper agency and receives notice of the right to sue.  Id. at 379.  Failure to exhaust administrative remedies with the E.E.O.C. is properly raised in the context of a 12(b)(6) motion.  Green v. Liberty Healthcare Sys., LLC, Civ. A. No. 10-413, 2010 U.S. Dist. LEXIS 105481, 7-9 (W.D. La. 2010).  Mr. McClinton's Notice of Charge of Discrimination shows that he alleged "sex" and "retaliation" charges before the E.E.O.C.  [Record Document 44-2, p.1.].  There is no indication in the record that Mr. McClinton filed a charge of racial discrimination before the E.E.O.C. A plaintiff who files a charge of discrimination

with the E.E.O.C. can only assert in a subsequent civil proceeding claims that "could reasonably be expected to grow out of the charge of discrimination." Pacheo v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006).  The factual basis outlined in Plaintiff's complaints gives no indication that a claim of racial discrimination would reasonably grow out of plaintiff's allegations of sexual harassment and retaliation, both of which center on the allegedly improper sexual advances of Ms. Charron rather than the race of Mr. McClinton.  Accordingly, the Court **GRANTS** the Defendants' motion to dismiss his Title VII racial discrimination claim.

The question remains whether Mr. McClinton has sufficiently pleaded a cause of action for racial discrimination under § 1981.  As stated previously, § 1981 forbids racial discrimination in the making and enforcement of private contracts.  Bobo v. ITT, Continental Baking Co., 662 F.2d 340, 342 (5th Cir. 1981).  Congress amended 42 U.S.C. § 1981 in 1991 to clarify that the statute prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).  In order to state a viable claim for disparate treatment based on race, a plaintiff must allege that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) others similarly situated were treated more favorably.  Ellis v. Compass Group USA, Inc., 426 Fed. Appx. 292, 295 (5th Cir. 2011).[2]

---

[2]Ellis did not involve a §1981 claim.  Still, "the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981

Under the headings "Causes of Action/Count 3: Title VII (42 U.S.C. § 2000e)/Race Discrimination" and "Causes of Action/Count 4: Title VII (42 U.S.C. §1964, 1981)," Mr. McClinton alleges the following:

> When trying to move from under Mgr. Amanda other job came open I apply for them an [sic] couldn't even be seen to get the job they was giving to all female all of which didn't no [sic] how to do the job where I have done the job for this co. before, in this club black are discriminated all the time there are two set of rules one for white an [sic] one for black, if black are late for work they are fired if white are late it ok Mary in the H M S Dept/ late everyday (white female) not fired, Taress late (black female) Team lead for HMS fired, un known [sic] black lady at gas station late an was fired

[Record Document 42, p. 4].

Defendants argue that Mr. McClinton fails to allege that he has suffered an injury in fact from any of the racial discrimination mentioned in his complaint. The Court agrees. Mr. McClinton alleges that when he tried to move to another job to avoid Ms. Charron, he was not even interviewed for that job and it was given to an unqualified female.  He then lists a number of instances where African-American workers were fired while similarly situated white employees kept their jobs.  Nowhere in this section of his complaint does Mr. McClinton allege facts that plausibly suggest that he was passed over for a job opportunity because of his race.  Rather, Mr. McClinton alleges that he was

---

and 1983 ... and Title VII." Lauderdale v. Tex. Dep't of Crim. Justice, Inst'al Div., 512 F.3d 157, 166 (5th Cir. 2007), see also Knox v. City of Monroe, 105 Fair Empl. Prac. Cas. (BNA) 797, 2009 U.S. Dist. LEXIS 1016 at *17 (W.D. La. 2009) (stating "because Title VII, § 1981, and § 1983 are 'parallel causes of action,' courts apply the same analysis"), LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 n.2 (5th Cir. 1996) (claims of racial discrimination brought under § 1981 are analyzed under the same evidentiary framework applicable to claims of employment discrimination brought under Title VII).

passed over because of his gender. The race of the woman who actually obtained the

job he was seeking is not even mentioned.

At other points in his pleadings, Mr. McClinton makes additional claims that he

was passed over for certain jobs for which he was qualified while other similarly situated

women were promoted:

> I talk to John the club Manager an [sic] told him what I was looking for an he talk
> to Vic my club mgr in Arizona an [sic] we all agree to a transfer for me an [sic] a
> job when I come to Sam Club 8273 that I would take a over night job to get there
> then he would have the Receiving job after that but he had some Associate we
> was moving around so I could fill the Receiving job, but that did not happen I
> move to Grocery Sale an [sic] when the Receiving came open he gave it to a
> Associate [sic] that had never did the job before (Female)...
>
> Then the Grocery team lead came open an [sic] again John gave it to an
> Associate that had never did it before (Female) by this time the job of Fax n pull
> came open again a job I have done before but could not get a [sic] interview for
> it an it was given to a (Female)
>
> [Record Document 43, p.4]

Once again, Mr. McClinton does not allege that any racial discriminatory intent was

involved in these decisions.  Indeed, he does not even specify the race of the promoted

employees, simply stating that they are women.  While pro se complaints must be

treated liberally, there is a limit to the amount of leeway a pro se plaintiff may be given.

The Court will not read in claims that simply are not present on the face of the

complaint.  Despite the "race discrimination" heading contained in his final amended

complaint, Mr. McClinton nowhere alleges any facts that plausibly suggest that

Defendants failed to hire him because of his race.  Accordingly, the Court **GRANTS** the

Defendants' motion to dismiss Mr. McClinton's § 1981 racial discrimination claim.

**D.    Gender Discrimination**

Mr. McClinton asserts a claim of gender discrimination under Title VII, alleging the

following:

13. The facts alleged above are incorporated by reference.

14. Mr. McClinton a Black man was intentionally discriminated against by his
employers. As alleged above, Mr. McClinton was singled out an treated less
favorably than others similarly situated because of his gender. Specifically, Mr.
McClinton was terminated for not dropping the E.E.O.C. charge an [sic] for filing a
police report on manage [sic] Amanda.

15. Mr. McClinton's gender was a motivating factor in his employers' [sic] adverse
employment actions. (male)

...

16. Mgr. Amanda (white female) was only transfer [sic] to another store.

[Record Document 32, p.4].

No additional facts alleging gender discrimination in any employment decision involving

Mr. McClinton other than his termination are alleged above paragraphs thirteen through

sixteen.  To establish a prima facie case of employment discrimination under Title VII,

Mr. McClinton must show: (1) he is a member of a protected class; (2) he was qualified

for the position at issue; (3) he suffered an adverse employment action; and (4) he was

replaced by someone outside of his protected class or otherwise treated less favorably

than similarly-situated employees outside the protected class.  Okoye v. Univ. of Tex.

Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).

Mr. McClinton has alleged no facts in support of his gender discrimination claim

that plausibly suggest that his gender was a motivating factor in the decision to

terminate him.  Rather, Mr. McClinton makes a number of conclusory statements.  He claims that he was fired because he filed an E.E.O.C. charge. While this statement appears to assert a retaliation claim, it does not allege any facts that raise a reasonable expectation that discovery would uncover evidence supporting the allegation that he was terminated because of his gender.  Mr. McClinton further claims that he was intentionally discriminated against by his employers, that he was singled out and treated less favorably than others similarly situated because of his gender, and that gender was a motivating factor in the Defendants' "adverse employment actions." These conclusory statements simply rephrase the legal standards for gender discrimination claims; they allege no facts that plausibly support a gender discrimination claim in this particular case.  A pleading compromised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule Eight of the Federal Rules of Civil Procedure.  Singleton v. Labor Finders, Civ. A. No. 11-732, 2011 U.S. Dist. LEXIS 148832 at *4 (W.D. La. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

Mr. McClinton's allegation that Ms. Charron was merely transferred to another store while Mr. McClinton was terminated after the alleged sexual harassment likewise does not plausibly plead a claim of gender discrimination.  The Fifth Circuit has held that in order to be "similarly situated" an employee must be treated differently under "nearly identical" circumstances.  Wheeler v. BL Dev. Corp., 415 F.3d 399, 405 (5th Cir. 2005). "Employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or different disciplinary records are not considered to be

'nearly identical.'" Mosley v. Roadway Express Inc., Civ. A. No. H-07-1406, 2009 U.S. Dist. LEXIS 32850 at *14 (S.D. Tex. 2009).  Mr. McClinton alleges elsewhere that Ms. Charron was his manager; she was necessarily, then, an employee with different responsibilities and a different supervisor than Mr. McClinton.  The bare allegation that she was transferred to another store while Mr. McClinton was fired is therefore insufficient to plausibly raise a gender discrimination claim.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Mr. McClinton's gender discrimination claim.

## E.   Remaining State Law Claims

Finally, Mr. McClinton raises state law claims of intentional and negligent infliction of emotional distress. To state a claim for intentional infliction of emotional distress ("IIED") under  La. R.S. §23:301 et seq, a plaintiff must show: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." McCoy v. City of Shreveport, 492 F.3d 551, 563 (5th Cir. 2007) (quoting White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991)).  The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id.  The threshold for outrageous conduct is high. Wilson-Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc., 2011 U.S. Dist. LEXIS

139937 at *10 (M.D. La. 2011).  Cases arising in the workplace are limited to situations where the distress is "more than a reasonable person could be expected to endure" and the offending conduct is "intended or calculated to cause severe emotional distress." Nicholas v. Allstate Ins. Co., 765 So.2d. 1017, 1026 (La. 2000).  Ordinary employment disputes, even those involving discrimination and sexual harassment, will rise to the level of IIED only in the most unusual of cases. Id. at 1027.

Mr. McClinton alleges that the "actions of Amanda Charron" constituted intentional infliction of emotional distress.  [Record Document 42, p.5].  The Court assumes that Mr. McClinton intends to refer to the facts alleged in connection with his sexual harassment claim.  The question is therefore whether Mr. McClinton has plausibly plead actions of Ms. Charron that are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  McCoy v. City of Shreveport, 492 F.3d 551, 563 (5th Cir. 2007).  The Court is not convinced that Mr. McClinton has plead facts that raise the reasonable possibility that discovery will lead to evidence of extreme and outrageous behavior on the part of Ms. Charron.  Mr. McClinton has had five opportunities to amend his complaint and to describe Ms. Charron's behavior towards him. While inappropriate and unprofessional, the three hugs and two pinches on the rear Mr. McClinton describes do not approach the level of atrocious behavior required to make out a claim of intentional infliction of emotional distress.  See e.g. Smith v. Amedisys Inc., 298 F.3d 434 (5th Cir. 2002) (upholding grant of summary judgment for defendants on plaintiff's

IIED claim where one supervisor entered plaintiff's hotel room and attempted to have her lay with him in bed, frequently held plaintiff's hand and put his arms around her, and where another supervisor suggested plaintiff prostitute herself to obtain business for the company).  Neither is the Court is persuaded that there is a reasonable expectation that discovery will lead to evidence sufficient to meet the "extreme and outrageous" threshold.  Mr. McClinton consistently describes the same seven instances in his six complaints, and it is implausible to think that discovery would uncover other happenings between Mr. McClinton and Ms. Charron that have not already been alleged.

As the actions of Ms. Charron do not rise to the level of being "extreme and outrageous," the Court need not address whether Mr. McClinton's negligent infliction of emotional distress action is barred by the Louisiana Workers' Compensation Act.  La. R.S. §23:1032(A).  Furthermore, because Ms. Charron's actions are not sufficiently extreme and outrageous to state a claim of intentional infliction of emotional distress, a fortiori they do no fall into the category of "having an especial likelihood of genuine and serious mental distress" as required by Moresi v. State Through Dept. Of Wildlife and Fisheries, 567 So.2d 1081, 1096 (La. 1990).

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Mr. McClinton's claims of negligent and intentional infliction of emotional distress.

### F.    Retaliation Claim

Although no heading for a claim of retaliation for his E.E.O.C. filing and obtaining of a police report is found in his complaints, Mr. McClinton makes clear that he intends to

pursue a Title VII retaliation claim.  So long as the complaint alleges facts upon which

relief can be granted, it states a claim even if it "fails to categorize correctly the legal

theory giving rise to the claim."  <u>Dussouy v. Gulf Coast</u>, 660 F.2d 594, 604 (5th Cir.

1981).  42 U.S.C. §2000e-3(a) establishes a claim for retaliation against an employee

who files an E.E.O.C. complaint:

> (a) Discrimination for making charges, testifying, assisting, or participating in
> enforcement proceedings: It shall be an unlawful employment practice for an
> employer to discriminate against any of his employees or applicants for
> employment, for an employment agency, or joint labor-management committee
> controlling apprenticeship or other training or retraining, including on-the-job
> training programs, to discriminate against any individual, or for a labor
> organization to discriminate against any member thereof or applicant for
> membership, because he has opposed any practice made an unlawful
> employment practice by this subchapter, or because he has made a charge,
> testified, assisted, or participated in any manner in an investigation, proceeding,
> or hearing under this subchapter.

> 42 U.S.C. §2000e-3(a).

Mr. McClinton repeatedly asserts that he was terminated because he filed a police report

and a charge with the E.E.O.C.  Under the heading "Gender Discrimination," he writes,

"Mr. McClinton was terminated for not dropping the E.E.O.C. charge an [sic] for filing a

police report on manage [sic] Amanda." [Record Document 32, p.4].  Similarly, in his

opposition to the Defendant's first motion to dismiss, he claims, "Plaintiff was a former

employee of Sam's Club located at 7400 Youree Dr. Shreveport, Louisiana, where I was

terminated on December 7, 2011 for not droping [sic] the E.E.O.C. Charge against

manager Amanda an [sic] not dropping the Police report against her."  [Record

Document 31-1, p.4], <u>see also</u> [Record Document 43-1, p.44].  As Defendants have not

moved to dismiss this retaliation claim, it remains pending.  The Court expresses no opinion on whether it has been adequately plead.

## III.   Conclusion

For the reasons given above, the Court **GRANTS** Defendants' two motions to dismiss [Record Documents 38 and 44] and hereby **dismisses with prejudice** all Mr. McClinton's claims except his retaliation claim, which remains pending. September 28, 2012.


_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE